## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-80750-KMM
Case No. 09-ap-01838-EPK
Case No. 09-ap-01839-EPK

HARLEY N. KANE, and
CHARLES J. KANE,

       Appellants,

vs.

STEWART TILGHMAN FOX & BIANCHI, P.A.,
WILLIAM C. HEARON, P.A., and
TODD S. STEWART, P.A.,

       Appellees.

_____/

## ORDER

THIS CAUSE is before the Court on an appeal from the Final Judgment and Memorandum Opinion, which were entered by the Bankruptcy Court on May 10, 2012.[1]  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001.  For the reasons stated herein, the Bankruptcy Court's Final Judgment and Memorandum Opinion are affirmed.

---

[1] Charles Kane filed a separate appeal of the Final Judgment and Memorandum Opinion which was subsequently consolidated with the instant matter.  See Case No. 12-CV-80751 (ECF No. 10).

## FACTUAL BACKGROUND[2]

Harley Kane and Charles Kane (collectively, the "Appellants") are attorneys and were the only partners in the general partnership of Kane & Kane (the "Partnership"). Appellants worked together with a separate group of lawyers (collectively, the "PIP Lawyers") to file thousands of lawsuits in the State of Florida on behalf of medical providers against the Progressive Insurance Companies ("Progressive"). The PIP Lawyers brought various claims under insurance policies issued by Progressive on behalf of their clients (the "PIP Claims"). All of the PIP Lawyers jointly represented all of the clients for the purpose of bringing claims on behalf of as many clients as possible. In order to further pressure Progressive into settlement, the PIP Lawyers decided to also file lawsuits for bad faith refusal to settle claims (the "Bad Faith Claims"). In order to pursue the Bad Faith Claims on behalf of their clients, the PIP Lawyers engaged Appellees to serve as counsel. The PIP Lawyers and Appellees entered into an engagement agreement for Appellees to file Bad Faith Claims for the clients represented by the PIP Lawyers. Although Appellees never signed engagement agreements with all of the clients represented by the PIP Lawyers, Appellees effectively represented the interests of every client asserting PIP Claims because the eventual goal was to bring Bad Faith Claims on behalf of as many clients as

---

[2] The factual background is briefly summarized for references purposes. This Court finds that the Bankruptcy Court's factual findings are well-supported by competent evidence and are not clearly erroneous. Accordingly, this Court adopts the Bankruptcy Court's factual findings and incorporates them herein by reference. Although Appellants claim that numerous of these factual findings are erroneous, they only support this claim with their own self-serving testimony, which the Bankruptcy Court found to be not credible throughout the hearing. See Opinion, at 7 ("The [Appellants'] testimony on this basic issue was not believable."); see also Opinion, at 11, 15, 16, 17, 20. The Bankruptcy Court, however, found the testimony of Appellees to be credible. See Opinion, at 9 ("Mr. Stewart's testimony at trial was, at all times, credible."). This Court finds no error in the Bankruptcy Court's factual findings or credibility determinations. See United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005) ("Assessing witness credibility is uniquely the function of the trier of fact, and it is one that a court of appeals may not and should not endeavor to replicate based on the cold paper record before it."); see also Yonadi v. Silberstein, No. 11-CV-80901, 2012 WL 718785, at *2–3 (S.D. Fla. Mar. 6, 2012).

possible. Under a contingency fee arrangement, Appellees would receive sixty percent of all attorney's fees received from the Bad Faith Claims. The overwhelming evidence demonstrates that the PIP Claims and Bad Faith Claims were inextricably intertwined and not considered separate actions by any party.[3] Appellees, however, were the only lawyers addressing the Bad Faith Claims or those clients who had potential bad faith claims.

Appellees successfully litigated the Bad Faith Claims and exerted control over their negotiation and settlement. In January 2004, Progressive and Appellees entered into negotiations to settle the Bad Faith Claims and any potential bad faith claims held by other clients with PIP Claims. Following Appellees' offer of twenty million dollars to settle all of the bad faith claims and a counter-offer of two million dollars by Progressive, a formal mediation was scheduled for April 2004 to settle all potential claims. In order to avoid a conflict of interest between the clients and counsel, Appellees suggested that the Bad Faith Claims be addressed before the PIP Claims were addressed. Appellees were concerned that any apportionment in an aggregate settlement between the PIP Claims and Bad Faith Claims would create a conflict of interest between the clients and counsel. Appellees were apprehensive because ninety percent of any recovery of the PIP Claims would go to counsel, while only ten percent would go to the clients. Whereas in the Bad Faith Claims, the clients would receive sixty percent of any potential recovery and counsel would receive the remainder.

Prior to the mediation, Appellees and the PIP Lawyers met to discuss the claims and negotiation strategies. Appellees were authorized to not only negotiate and settle all the Bad

---

[3] This Court, like the Bankruptcy Court, rejects Appellants' claim that the two causes of action were separate. See Opinion, at 7 ("The evidence admitted at trial shows, overwhelmingly, that the [Appellees], the [Appellants], the other PIP Lawyers, and Progressive treated the PIP [Claims] and Bad Faith [Claims] as inextricably intertwined.").

Faith Claims, but also the PIP Claims.  As a result, the PIP Lawyers agreed in writing to increase Appellees contingent fee to seventy-five percent of any recovery of the Bad Faith Claims.[4]

At the mediation, Progressive made an offer to settle the Bad Faith Claims for $3.5 million while Appellees made a counter offer of $18.5 million. The mediation resulted in an impasse, and Appellees reported this result to the PIP Lawyers.[5]  After the mediation, Appellees continued to successfully pursue the Bad Faith Claims in state court and achieved numerous material adverse rulings against Progressive.

While Appellees were actively pursuing the Bad Faith Claims in state court, the PIP Lawyers—without notifying Appellees—met with Progressive and settled all claims, including all PIP Claims, Bad Faith Claims, and any potential bad faith claims held by clients with PIP Claims (the "Settlement").  The Settlement, written in a document called the Memorandum of Understanding, was for approximately $14.5 million, of which more than $10.9 million was allocated to attorney's fees and costs for the PIP Claims.  No specific amount of the aggregate settlement was allocated to any bad faith claims.  The PIP Lawyers then prepared a joint letter to the clients, which omitted numerous material details, in order to obtain the necessary releases.

Appellees did not learn of the Settlement until after it was executed.  The PIP Lawyers refused to provide the documents related to the Settlement or even the terms of the Settlement to Appellees.  Only after a state court issued an order compelling the documents did Appellees learn of the terms of the Settlement.

---

[4] Thus, the PIP Lawyers would only receive 10% of the total recovery for any of the Bad Faith Claims, while they would receive 90% of any recovery of the PIP Claims.  The Bankruptcy Court found this factor to be material in its decision because "in a settlement of all of the claims against Progressive, the allocation of recovery between PIP claims and bad faith claims would have a marked impact on the amount received by the PIP Lawyers." Opinion, at 10.

[5] The Bankruptcy Court rejected Appellants' claim that they believed the mediation was a failure and that Appellees were no longer going to negotiate with Progressive. See Opinion, at 10–11.

The PIP Lawyers and Progressive subsequently amended the Settlement in a document called the Amended Memorandum of Understanding, which was also executed without notifying Appellees. This document arbitrarily allocated $1.75 million for the Bad Faith Claims out of the aggregate settlement amount of approximately $14.5 million.[6] The vast majority of clients, however, still did not have an apportionment of the aggregate settlement allocated to their potential bad faith claims even though it required a release of such claims.[7] The PIP Lawyers then notified the clients about the conflict between the PIP Lawyers and Appellees over attorney's fees, terminated the Appellees' representation, appeared in the Bad Faith Claims as counsel for the clients, and voluntarily dismissed the Bad Faith Claims.

Following these events, Appellees filed a lawsuit asserting various claims against the PIP Lawyers in Florida state court (the "State Court Action"). After a ten-week bench trial, the state court entered a final judgment in favor of Appellees and against Appellants, jointly and severally, in the amount of $2 million plus interest on the claim of quantum meruit and unjust enrichment (the "State Court Judgment"). See State Court Judgment (ECF No. 2-30, at 10).

On November 17, 2008, each Appellant and the Partnership filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Chapter 11 Proceeding"). After a hearing on Appellees' motion to dismiss on March 20, 2009, the Bankruptcy Court orally ruled that all three petitions were dismissed because they were filed in bad faith. However, the Bankruptcy Court ordered that the effective date for dismissal would be March 30, 2009. In the interim, the Partnership was authorized to only pay for goods and services in the ordinary course of business

---

[6] The Bankruptcy Court found that the Parties amended the Settlement as a weak attempt to make it appear less incriminating since Appellees now had a right to some form of compensation. See Opinion, at 15.

[7] Interestingly, both settlement documents contained provisions wherein the PIP Lawyers agreed to indemnify Progressive against any claims for attorney's fees asserted by Appellees.

and no distributions were to be made to Appellants unless authorized by the Bankruptcy Court. See Mar. 20, 2009 Hr'g Tr., at 20 (ECF No. 2-17, at 28). These rulings were later put forth in written orders and entered on the same date. See Order Dismissing Case (ECF No. 2-17, at 54); Order Restricting Distributions (ECF No. 2-17, at 52). Although neither Appellant was present during the hearing, Harley Kane acknowledged that he spoke to his bankruptcy counsel after the hearing and sought advice about the Partnership's ability to make certain payments. On March 24, 2009, Harley Kane caused the Partnership to pay approximately $30,000 in real estate taxes that were his personal obligation.

On March 30, 2009, each Appellant and the Partnership filed petitions under Chapter 7 of the U.S. Bankruptcy Code. On July 31, 2009, Appellees filed adversary complaints against both Appellants which asserted claims for denial of discharge under Section 727(a)(2) (Count I); denial of discharge under Section 727(a)(5) (Count II); denial of discharge under Section 727(a)(7) (Count III); exception from discharge of the State Court Judgment under Section 523(a)(4) (Count IV); and exception from discharge of the State Court Judgment under Section 523(a)(6) (Count V). See e.g., Adversary Complaint (ECF No. 2-30, at 1).

A hearing was held on the instant matter on November 7, 9, and 10, 2011 and January 20, 23, and 24, 2012.[8] The Bankruptcy Court subsequently issued a Final Judgment (ECF No. 1, at 5) and Memorandum Opinion (ECF No. 1, at 7) (collectively, the "Opinion"). The Bankruptcy Court entered judgment in favor of Appellants for every count in the adversary proceedings, except that judgment was entered in favor of Appellees and against (1) Harley Kane on Count III for denial of discharge under Section 727(a)(7); and (2) both Appellants on Count V for exception from discharge for the State Court Judgment under Section 523(a)(6).

---

[8] With the consent of the Parties, the Bankruptcy Court held a single hearing because the adversary proceedings were identical and based on the same underlying facts.

Appellants timely filed a Notice of Appeal of the Opinion regarding Count III and V.[9] Appellants now appeal the Bankruptcy Court's Opinion and present the following issues:

(1) Whether the Bankruptcy Court erred in determining that Appellees' debt was excepted from discharge under 11 U.S.C. § 523(a)(6) for willful and malicious injury?

(2) Whether the Bankruptcy Court erred in applying collateral estoppel with regard to factual findings in the State Court Action and Chapter 11 Proceeding?

(3) Whether the Bankruptcy Court erred in barring Harley Kane's discharge pursuant to 11 U.S.C. § 727(a)(7) because Harley Kane violated Sections 727(a)(2) and 727(a)(6)?

## DISCUSSION

A.   Standard of Review

"The district court must accept the bankruptcy court's factual findings unless they are clearly erroneous, 'but reviews a bankruptcy court's legal conclusions de novo.'"  In re Englander, 95 F.3d 1028, 1030 (11th Cir. 1996).  "Under de novo review, [a] Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." In re Brown, No. 6:08-CV-1517-ORL-18DAB, 2008 WL 5050081, at *2 (M.D. Fla. Nov. 19, 2008) (citing In re Piper Aircraft Corp., 244 F.3d 1289, 1295 (11th Cir. 2001)).  The Bankruptcy Court's findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. FED. R. BANKR. P. 8013.  The findings of a bankruptcy judge are accorded the

---

[9] Appellees do not appeal any adverse rulings by the Bankruptcy Court. See Appellees Br., at 2 n.1.

same weight as the findings of a district judge under Fed. R. Civ. P. 52. A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court upon examining the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). If the lower court's assessment of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, 470 U.S. 564, 573-574 (1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Id. Mixed questions of law and fact are also reviewed de novo. In re Lentek Int'l. Inc., 346 Fed. App'x 430, 433 (11th Cir. 2009).

> B.   The Bankruptcy Court's Determination that Appellees' Debt was Excepted from Discharge Under 11 U.S.C. § 523(a)(6) for Willful and Malicious Injury

"A Chapter 7 debtor is generally entitled to a discharge of all debts that arose prior to the filing of the bankruptcy petition." In re Mitchell, 633 F.3d 1319, 1326 (11th Cir. 2011) (citing 11 U.S.C. § 727(b)). "However, this 'fresh start' policy is only available to the 'honest but unfortunate debtor.'" Id. (quoting In re Fretz, 244 F.3d 1323, 1326 (11th Cir. 2001)). "To ensure that only the honest but unfortunate debtors receive the benefit of discharge, Congress enacted several exceptions to § 727(b)'s general rule of discharge." Id. Section 523 contains a list of such exceptions that will bar a discharge; however, "Section 523 must be narrowly construed, and the creditor has the burden of proving by a preponderance of the evidence that an exception to discharge applies." In re Cunningham, 482 BR 444, 447 (Bankr. N.D. Ala. 2012) (citing In re Bullock, 670 F.3d 1160, 1164 (11th Cir. 2012); In re Griffith, 206 F.3d 1389, 1396 (11th Cir. 2000)).

A debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) if it is a debt for a willful and malicious injury by the debtor to another entity or its property. In re Santry, 481 B.R. 824, 828–29 (Bankr. N.D. Ga. 2012) (citing Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)). Thus, a party objecting to a debtor's discharge must show that the debt arose from an injury that was both willful and malicious. See In re Holmes, No. 11-AP-00391TOM, 2012 WL 2359909, at *3 (Bankr. N.D. Ala. June 21, 2012) (citations omitted). The U.S. Court of Appeals for the Eleventh Circuit has recently stated that, for a willful injury,

> proof of 'willfulness' requires 'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.' In re Walker, 48 F.3d 1161, 1163 (11th Cir. 1995) (quoting In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989)). '[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury.' Id. at 1165; see also Kawaauhau v. Geiger, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury). Recklessly or negligently inflicted injuries are not excepted from discharge under § 523(a)(6). Kawaauhau, 523 U.S. at 64, 118 S.Ct. 974.

Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012) (holding that a fraudulent transfer of property by a co-conspirator constituted a willful and malicious injury under Section 523(a)(6) because the debtor transferred property without just cause in an attempt to place it beyond the reach of a creditor).

For conduct to be malicious, courts typically require conduct that is "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" Id. (quoting In re Walker, 48 F.3d at 1164). Thus, "'a showing of specific intent to harm another is not necessary'" in order to establish malice under Section 523(a)(6). Id. (quoting In re Ikner, 883 F.2d at 991).

The Bankruptcy Court found that the State Court Judgment was excepted from discharge pursuant to Section 523(a)(6) because Appellees had met their burden of proof regarding willful and malicious injury. See Opinion, at 55–62. This Court agrees with the Bankruptcy Court's determination.[10]

First, the overwhelming evidence demonstrates that Appellants' actions were willful because they intentionally committed acts with the purpose of increasing their fees and to injure Appellees.[11] This can be demonstrated by the PIP Lawyers secretly negotiating and settling all claims without notifying the Appellees, despite their active involvement in the case for over two years. See Opinion, at 13 ("The [Appellees'] absence at the settlement meeting and in the settlement negotiations was conspicuous. The [Appellants] intended to exclude them."). Also, the PIP Lawyers intentionally structured the Settlement to maximize their own attorney's fees

---

[10] Appellants commingled and generally asserted multiple arguments throughout their Brief and Reply. Although this Court has attempted to address every argument presented by Appellants, this Court finds that Appellants waived any arguments on appeal that they generally asserted without providing substantive argument on the merits. See Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003) (stating that an appellant waives an issue for which his brief makes only a "passing reference" and does not argue the merits).

[11] This Court agrees with the Bankruptcy Court that the willful prong could also be established because Appellants' actions were substantially certain to cause injury to Appellees. See Opinion, at 60–61 ("Even if the [Appellees] had not proven by a preponderance of the evidence that the [Appellants] actually intended to injure the [Appellees], the evidence is overwhelmingly that the [Appellants] acted intentionally in negotiating, structuring, and documenting the Secret Settlement, forcing [Appellees] out of the Bad Faith [Claims], and implementing the settlement with the clients, and that they knew, at the time of each such act, that [Appellees] would certainly be harmed by reduction or elimination of legal fees rightfully payable to the [Appellees]."). This Court also finds that the Bankruptcy Court correctly utilized a subjective analysis to determine substantial certainty dealing with injuries resulting from financial harm. See In re George, No. 09-AP-00445CED, 2012 WL 1229840, at *4–5 (Bankr. M.D. Fla. Apr. 11, 2012) (quoting In re Levin, 434 B.R. 919 (Bankr. S.D. Fla. 2010) (adopting a subjective analysis for determining substantial certainty for cases involving injury from financial harm). The evidence demonstrated that both Appellants knew that their actions were substantially certain to cause injury to the Appellees. For example, Charles Kane testified that the Settlement did not feel right and that he knew Appellees would assert a claim. See Nov. 9, 2011 Hr'g Tr., at 460; Nov. 20, 2011 Hr'g Tr., at 612–13.

while minimizing Appellees' fees. Even when the PIP Lawyers amended the Settlement, the assigned portion to the Bad Faith Claims was still less than the amount Progressive had previously offered Appellees to settle the Bad Faith Claims in April 2004. Even more egregiously, the Settlement contained a provision in which the PIP Lawyers would indemnify Progressive for any claims of attorney's fees asserted by Appellees, a provision which even made Charles Kane uncomfortable. See Nov. 9, 2011 Hr'g Tr., at 458–59 (ECF No. 2-22); Nov. 10, 2011 Hr'g Tr., at 611–13, 615–17 (ECF No. 2-13). Additionally, the fact that the PIP Lawyers refused to disclose the terms of the Settlement to Appellees and required them to obtain a court order further demonstrates that this injury was willful. See Nov. 7, 2011 Hr'g Tr., at 98–101, 109–11 (ECF No. 2-21). Appellants attempt to escape liability by claiming that they did not control the allocation of the Settlement since their clients approved it. See Appellants Br., at 21, 23. This Court rejects this claim because Appellants drafted the Settlement and forcefully recommended it to their clients—while omitting material details in order to obtain informed consent.[12] No one forced Appellants to do either of these actions. See Opinion, at 16, 61. It is clear that Appellants acted intentionally in structuring and negotiating the Settlement to injure Appellees.

Second, Appellants' actions were malicious.[13] Malice can be implied when a debtor commits an act that is "'wrongful and without just cause or excessive even in the absence of

---

[12] This Court agrees with the Bankruptcy Court that there are troubling omissions in the joint letter that the PIP Lawyers sent to their clients. The Bankruptcy Court found that it "failed to inform the clients in the Bad Faith Litigation that the settlement included a release of all bad faith claims but allocated no specific amount to such claims, failed to inform the clients of the total amount of the settlement, failed to analyze the value of the bad faith claims to be released, and failed to disclose the amount of attorneys' fees to be paid a result of the settlement." Opinion, at 14.

[13] Opinion, at 61 ("The [Appellants'] actions were wrongful. There was no just cause for their actions. Their actions were malicious.").

personal hatred, spite or ill-will.'" Thomas, Fed. App'x at 548 (quoting In re Walker, 48 F.3d at 1164).[14]   There simply is no valid reason for Appellants' conduct in secretly negotiating the Settlement without the Appellees while attempting to cover up the fact that no portion of the Settlement was apportioned to the Bad Faith Claims. Appellants cannot even explain their actions and simply attempt to negate a finding of malicious conduct by blaming Progressive or their own clients.   The evidence clearly demonstrates that Appellants specifically acted with animosity towards Appellees and wanted to harm them by eliminating the legal fees that were rightfully owed to Appellees.[15]   This Court finds that Appellants' actions were malicious by intentionally and without just cause arranging the Settlement to injure the Appellees.[16]

Additionally, this Court rejects Appellants' claim that this is a mere breach of contract action and that the Bankruptcy Court erred because the State Court Judgment did not hold Appellants liable for an intentional tort.   See Appellants Br., at 16–25; Reply, at 2–10.   As the Bankruptcy Court correctly noted, "[t]his case does not present a simple intentional breach of contract claim, divorced from tortious conduct, as the [Appellants] argue.   In the context of financial harm, it is hard to imagine a more robust claim based on willful and malicious injury." Opinion, at 62; see In re Barbee, 479 B.R. 193, 208–09 (Bankr. S.D. Ga. 2012) (finding that a

---

[14] This Court rejects Appellants' bald allegation that the Bankruptcy Court collapsed the willfulness and malicious prong into a single inquiry.   See Appellants Br., at 20; Reply, at 7.   A review of the Opinion demonstrates that the Bankruptcy Court reviewed the applicable law under Section 523(a)(6) and analyzed the underlying facts to establish that Appellants committed an injury that was both willful and malicious.   See Opinion 60–62.   Simply because the same egregious conduct of Appellants supports a finding of both requirements does not merit reversal.

[15] The Bankruptcy Court found that "each [Appellant] acted not merely to pad his own pocket but also with ill will toward the [Appellees]." Opinion, at 17.   Moreover, the Bankruptcy Court found that "[Appellants] actions were wrongful and there was no just cause for their actions." Opinion, at 17.

[16] This Court also rejects Appellants' claim that Appellees did not have a property interest in the Settlement because no charging lien was obtained.   See Appellants Reply, at 10.   Appellants' misreading of In re O'Neal, No. 06-AP-00039ABB, 2006 WL 4112663 (Bankr. M.D. Fla. Nov. 28, 2012) does not support this conclusion.

breach of a security agreement was willful and malicious under Section 523(a)(6) to bar a debtor's discharge).  This Court finds that the Bankruptcy Court did not err by independently evaluating the State Court Judgment and finding that Appellants had committed a willful and malicious injury.  See Opinion, at 61–62; see also In re Jennings, 670 F.3d at 1334; In re Demarais, No. 12-CV-80426, 2012 WL 3779021, at *3 (S.D. Fla. Aug. 31, 2012) (rejecting a debtor's claim that a fraudulent transfer is remedial in nature and not an independent cause of action that can be excepted from discharge under Section 523(a)(6)).  Moreover, the determination that the State Court Judgment is nondischargable due to Appellants' egregious conduct in structuring the Settlement to spite Appellees will not expand Section 523(a)(6) to include all intentional breaches of contract.  See Kawaauhau, 523 U.S. at 62.

Thus, the Bankruptcy Court did not err in finding that the State Court Judgment was excepted from discharge under Section 523(a)(6) because it arises from Appellants' willful and malicious injury to Appellees.

> C.   The Bankruptcy Court's Determination that Collateral Estoppel Applied to
> Factual Findings in the State Court Action and Chapter 11 Proceeding

"Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior action.  The principles of collateral estoppel apply in discharge exception proceedings in bankruptcy court." In re Colvin, No. 11-AP-3035JPS, 2012 WL 3775884, at *3 (Bankr. M.D. Ga. Aug. 28, 2012) (applying collateral estoppel principles to determine whether a civil contempt order issued by a state court was appropriate for summary judgment under Sections 727(a)(2) and 523(a)(6) (quoting In re Bush, 62 F.3d 1319, 1322 (11th Cir. 1995)).  Likewise, "collateral estoppel is applicable in bankruptcy proceedings involving the denial of discharge under [Section] 727." In re Jacobs, 381 B.R. 147, 161 (Bankr. E.D. Pa. 2008).  "A bankruptcy court may rely on collateral estoppel to reach conclusions about certain facts, foreclose relitigation of

those facts, and then consider those facts as 'evidence of nondischargeability.'" <u>In re Thomas</u>, 288 Fed. App'x at 548 (citation omitted). Here, Appellants claim that the Bankruptcy Court erred in applying collateral estoppel to certain factual findings determined in the State Court Action and the Chapter 11 Proceeding. <u>See</u> Appellants Br., at 25–29. This Court addresses each of these claims in turn.

### i. State Court Action

"If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect." <u>In re Colvin</u>, 2012 WL 3775884, at *3 (citing <u>In re St. Laurent</u>, 991 F.2d at 675–76). "Florida's doctrine of collateral estoppel bars 'identical parties from relitigating issues that have previously been decided between them.'" <u>Madura v. Countrywide Home Loans, Inc.</u>, 344 Fed. App'x 509, 518 (11th Cir. 2009) (quoting <u>Mobil Oil Corp. v. Shevin</u>, 354 So. 2d 372, 374 (Fla. 1977)). "Under Florida law, the following elements must be established before collateral estoppel may be invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case." <u>In re Fortner</u>, No. 12-CV-60478, 2012 WL 3613879, at *4 (S.D. Fla. Aug. 21, 2012) (citations omitted).

Appellants claim that the Bankruptcy Court erred because the State Court Judgment was based on unjust enrichment[17] and the issue of a willful and malicious injury under Section

---

[17] "To state a claim for unjust enrichment under Florida law, a plaintiff must allege facts that, if taken as true, would show: (1) a benefit was conferred upon the defendant; (2) the defendant either requested the benefit or knowingly and voluntarily accepted it; (3) a benefit flowed to the

523(a)(6) is a different issue and was never litigated nor necessary for the State Court Judgment.
Appellants Br., at 25.[18]

A review of the Bankruptcy Court's Opinion demonstrates that Appellants' claims of error are without merit. The Bankruptcy Court adopted certain factual findings directly from the State Court Judgment. Those findings primarily dealt with the relationship between the PIP Lawyers and Appellees and the proceedings in the PIP Claims and Bad Faith Claims. Opinion, 34–39. First, these factual findings were actually litigated in the State Court Action because they were determined after a ten-week trial on the merits and derived directly from the State Court Judgment. Second, the factual findings were critical and necessary to the State Court Judgment because they formed the basis for finding that Appellees were entitled to an award because they represented all of the clients despite a lack of written engagement letter. See e.g., State Court Judgment, at 16.[19] Third, the standard of proof under both discharge and unjust enrichment are the same. Finally, the Bankruptcy Court correctly only adopted factual findings that were

---

defendant; and (4) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof." In re Wiand, No. 05-CV-1856T27MSS, 2007 WL 963165, at *5 (M.D. Fla. Mar. 27, 2007) (citing W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc., 728 So. 2d 297, 303 (Fla. Dist. Ct. App. 1999).

[18] Appellants also argue that collateral estoppel cannot apply because the State Court Judgment applied to "collective defendants" so the conduct in the State Court Judgment cannot be imputed on them individually. Appellants Br., at 26–28. Additionally, Appellants claim that they cannot be held liable for the actions of the other PIP Lawyers because there was no agency relationship. Appellants Br., at 27–28, n.34. These claims are without merit and devoid of legal support. Appellants conveniently omit the fact that the State Court Judgment is against them, along with the other law firms, for the conduct underlying the State Court Judgment. Simply because the state court refers to the parties collectively as "the Defendants" in certain parts and does not specifically identify the Appellants does not make collateral estoppel inapplicable. The State Court Judgment—which found Appellants liable for over $2 million—is binding against them. See State Court Judgment, at 22 ¶ 3.

[19] The Bankruptcy Court was careful not to adopt any factual findings which were not necessary for the State Court Judgment. For example, the Bankruptcy Court did not adopt any of the factual findings regarding that "[t]he State Court expressed concern [regarding] the PIP Lawyers' violation of several rules of the Florida Bar, actions at odds with the interests of their clients, and intentional harm to Plaintiffs." See Opinion, at 33.

identical to those issues in the State Court Judgment. See Madura, 344 Fed. App'x at 518 (citing Gordon v. Gordon, 59 So. 2d 40, 44 (Fla. 1952)) (stating that collateral estoppel "applies when the two causes of action are different and estops the parties from litigating in the second suit only the points and questions common to both causes of action"). Although Appellants argue that the State Court Judgment did not decide the issue of willful and malicious injury, see Appellants Br., at 25; Reply, at 11–12, the Bankruptcy Court did not apply collateral estoppel to the issue of willful and malicious injury, but only to common questions of fact between the bankruptcy proceedings and the State Court Action.[20] The Bankruptcy Court correctly and independently determined that Appellants committed a willful and malicious injury under Section 523(a)(6) based on these facts and the evidence and testimony submitted at trial. See In re Colvin, 2012 WL 3775884, at *3 (citing In re St. Laurent, 991 F.2d 672, 675–76 (11th Cir. 1993) ("While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability."). Accordingly, the Bankruptcy Court did not err in applying collateral estoppel to the common factual findings between the bankruptcy proceedings and the State Court Action.

ii. Chapter 11 Proceeding

The Bankruptcy Court also applied collateral estoppel to certain factual findings from its order dismissing the Chapter 11 Proceeding. Opinion, at 40–41. To apply collateral estoppel for a prior federal judgment, "the issue must be identical to that adjudicated in the earlier litigation; the issue must have been 'actually litigated' in the earlier lawsuit; resolution of the issue 'must

---

[20] The Bankruptcy Court explicitly stated that it was not giving the State Court Judgment preclusive effect for the issue of willful and malicious injury under Section 523(a)(6) and that it was independently evaluating this issue. See Opinion, at 61–62.

have been a critical and necessary part of the [earlier] judgment'; and the 'party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.'" In re Thomas, 288 Fed. App'x at 548 (quoting I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986)).

Here, the Bankruptcy Court adopted certain factual findings from the Chapter 11 Proceeding which dealt with Appellants' earnings, their conduct in lavishly spending funds despite their knowledge of the State Court Action, and their knowledge that they would likely be liable for a significant amount of money. Opinion, at 40–41. At the hearing on March 20, 2009, the Bankruptcy Court explicitly stated that it was dismissing the Chapter 11 Proceeding because of Appellants' "motivation and intent, [in] filing their petitions, coupled with the intentional disregard for the consequences of their pre-petition actions that show a lack of good faith in filing [the Chapter 11 Proceeding]." See Mar. 20, 2009 Hr'g Tr., at 11. It is clear that the factual findings relating to Appellants' conduct—which made them unable to post a bond—are critical to the Bankruptcy Court's determination that the Chapter 11 Proceeding was filed in bad faith.[21] Accordingly, these findings were actually litigated, critical and necessary, and Appellants had a full and fair opportunity to litigate these issues. Additionally, there are common issues between the instant matter and the Chapter 11 Proceeding.[22] Appellants' conduct in lavishly spending

---

[21] In determining whether a petition filed under Chapter 11 should be dismissed, courts consider multiple factors guided by those listed in In re Phoenix Piccadilly, Ltd., 849 F.2d 1393 (11th Cir. 1984). In general, courts "consider factors that evidence 'intent to abuse the judicial process and the purposes of the reorganization provisions' or, in particular, factors that evidence that the petition was filed 'to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" In re Harco Co. of Jacksonville, LLC, 331 B.R. 453, 455–56 (Bankr. M.D. Fla. 2005) (quoting In re Phoenix Piccadilly, Ltd., 849 F.2d at 1394–95).

[22] Although Appellants confine their argument to Section 523(a)(6), see Appellants Br., 28–29, there is no indication that the Bankruptcy Court applied collateral estoppel on this Count. A review of the factual findings adopted from the Chapter 11 Proceeding, which have nothing to do with Appellants organizing the Settlement, supports this conclusion.

money despite the high likelihood of being liable for a significant judgment shares common factual issues with regard to the Bankruptcy Court's determination of Count I and Count IV of the adversary complaints, which were both decided in favor of Appellants. See Opinion, at 42–46, 53–55.[23]   Accordingly, the Bankruptcy Court did not err in applying collateral estoppel to certain factual findings from the Chapter 11 Proceeding.

Even if this Court were to determine that the Bankruptcy Court erred in applying collateral estoppel to factual findings of the State Court Action and the Chapter 11 Proceeding, it would not warrant reversal of the Opinion.  The Bankruptcy Court applied collateral estoppel to findings from the State Court Action and Chapter 11 Proceeding simply to substantiate and corroborate its own independent factual findings.  See Opinion, at 39 ("Each of the foregoing findings of the State Court is entitled to collateral estoppel effect here and serves to bolster this Court's independent but substantially identical findings set out in section I of this Memorandum Opinion."), 41 ("This Court's prior findings [in the Chapter 11 Proceeding] only serve to bolster the independent findings set out in section I of this Memorandum Opinion.").  The Bankruptcy Court held a six-day hearing in which it independently heard testimony and received evidence.  The Bankruptcy Court then issued a lengthy opinion in which it independently derived factual findings based on the evidence and testimony submitted at the hearing. See Opinion, at 4–31.  These factual findings were made independently by the Bankruptcy Court and without applying any deference to the State Court Action and the Chapter 11 Proceeding.  See Opinion, at 4.  Thus, any error would be harmless.  In re Carapella, 115 B.R. 365, 368 (M.D. Fla. May 22,

---

[23] In Count I, the Bankruptcy Court found that although Appellants spent money lavishly, Appellees failed to prove that they did so with the intent to hinder, delay, or defraud creditors under Section 727(a)(2).  See Opinion, at 46.  In Count IV, the Bankruptcy Court found that even though Appellees made a demand on Appellants for the proceeds from the Settlement, there was no evidence that demonstrated Appellants had the requisite intent to commit embezzlement under Section 523(a)(4).  Opinion, at 53–55.

1990) (citing FED. R. BANK. P. 9005; FED. R. CIV. P. 61) (finding that a bankruptcy court's application of collateral estoppel was harmless because independent evidence supported the bankruptcy court's decision); see also In re Club Assocs., 951 F.2d 1223, 1224 n.13 (11th Cir. 1992) (applying the harmless error rule in a bankruptcy appeal); In re Fortner, 2012 WL 3613879, at *7 (same).

Thus, this Court finds no error in the Bankruptcy Court's determination that collateral estoppel applied to certain factual findings contained in the State Court Action and the Chapter 11 Proceeding.

D.  The Bankruptcy Court's Determination that Harley Kane's Discharge was Barred Pursuant to 11 U.S.C. § 727(a)(7)

Count III of the adversary complaint sought a denial of discharge under Sections 727(a)(7) and 727(a)(2) by claiming that Harley Kane caused the Partnership to pay his personal, non-dischargeable debts with the intent to delay and hinder Appellees' ability to collect funds under the State Court Judgment.  Section 727(a)(7) provides that a bankruptcy court "shall grant the debtor a discharge, unless . . . the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider . . . ." 11 U.S.C. § 727(a)(7) (emphasis added). "To deny a debtor's discharge under § 727(a)(2), the plaintiffs must show that the debtor transferred, removed, destroyed, mutilated, or concealed property with the intent to hinder, delay, or defraud his creditors."  In re Tipler, 360 B.R. 333, 340 (Bankr. N.D. Fla. 2005) (citations omitted). "The plaintiffs bear the burden of demonstrating actual fraudulent intent." Id. (citing In re Miller, 39 F.3d 301, 306 (11th Cir. 1994)). "However, because a debtor is unlikely to admit his fraudulent

intent, a finding of actual intent may be based on circumstantial evidence or inferred from the surrounding facts and circumstances." Id. (citations omitted).

To prevail on a claim under Section 727(a)(2) regarding a previous bankruptcy proceeding involving an insider, a creditor must "establish by a preponderance that (1) there was destruction or concealment, (2) within one year of the filing of the debtor's case, (3) of the property of the estate of an insider, (4) by the debtor, (5) with the intent to hinder, delay, or defraud creditors." In re Phillips, 418 B.R. 445, 465 (Bankr. M.D. Fla. 2009) (citing In re Unger, 333 B.R. 461, 470 (Bankr. M.D. Fla. 2005)); see also In re Weisenfeld, No. 09-AP-2526AJC, 2011 WL 1048563, at *8 (Bankr. S.D. Fla. Mar. 18, 2011).[24] Actions to deny a discharge under Section 727 are construed strictly against the complaining party and liberally in favor of the debtor. See In re Fernandez-Rocha, 451 F.3d 813, 816 (11th Cir. 2006). "A creditor seeking to deny a debtor's discharge bears the burden of proof as to each element by a preponderance of the evidence." In re Dereve, 381 B.R. 309, 324 (Bankr. N.D. Fla. 2007) (citing FED. R. BANKR. P. 4005; Grogan v. Garner, 498 U.S. 279, 287 (1991)). "However, once a creditor meets this initial burden, the burden shifts to the debtor to show by a preponderance of the evidence that he or she is entitled to a discharge." Id. (citing In re Stevens, 250 B.R. 750, 755 (Bankr. M.D. Fla. 2000)); see also In re Prontos, 322 Fed. App'x 930, 932 (11th Cir. 2009).

---

[24] "Section 727(a)(7) extends the basis for denial of discharge to the debtor's misconduct in a substantially contemporaneous related bankruptcy case. Thus if the debtor engages in objectionable conduct in a case involving [an insider], the debtor may be denied a discharge in the debtor's own case." KING ET AL., COLLIER ON BANKRUPTCY ¶ 727.10 (15th rev. ed. 1998); see also In re Watman, No. 99-MW-107, 2000 WL 35916015, at *4 (1st Cir. 2000) (stating that "the vast majority of case law interpreting §§ 727(a)(7) and (a)(2) links the two provisions by allowing an individual debtor's discharge to be denied when he or she transfers, removes, destroys, mutilates, or conceals property of an insider corporation in violation of § 727(a)(2) when the insider corporation is the subject of a separate bankruptcy case") (citations omitted).

Here, this Court finds no error in the Bankruptcy Court's determination that Harley Kane's discharge should be barred pursuant to Sections 727(a)(7) and 727(a)(2) due to his conduct in the Partnership's Chapter 11 Proceeding.[25]  First, the Chapter 11 Proceeding was filed less than a year prior to the date Harley Kane filed his individual petition.  Second, the Partnership is an "insider" as defined by Section 101(31)(A) of the U.S. Bankruptcy Code since it is a general partnership in which Harley Kane is a general partner.  See In re Farris, No. 06-AP-00059BGC, 2008 WL 4830309, at *43–45 (Bankr. N.D. Ala. Sept. 30, 2008) (finding that an individual debtor's discharge was barred due to his conduct in an insider's previous bankruptcy proceeding).[26]  Third, both Parties admit that the transfer was done by Harley Kane with the property of the Partnership.  See Appellants Br., at 30; Appellees Br., at 33.  Finally, the Bankruptcy Court's determination that Harley Kane paid his personal real estate taxes in order to hinder and delay Appellees is well-supported by the record.  Opinion, at 51; see also Nov. 10, 2011 Hr'g Tr., at 663 (ECF No. 2-23).  Harley Kane knew about the delayed effectiveness of the dismissal of the Partnership's Chapter 11 Proceeding and the prohibition against making distributions to Appellants.  As an experienced attorney, Harley Kane's self-serving testimony

---

[25] The only argument Appellants presented in their Initial Brief regarding Sections 727(a)(7) and 727(a)(2) was that the Bankruptcy Court erred because Harley Kane transferred property of the Partnership and not his own property.  See Appellants Br., at 30.  As discussed supra, this argument is contrary to the applicable law.  See e.g., In re Hoefer, No. 09-AP-04009, 2010 WL 1658323, at *6 (Bankr. E.D. Tex. Apr. 23, 2010); In re Lobell, 390 B.R. 206, 218 (Bankr. M.D. La. 2008).  Additionally, Appellants waived all other arguments presented for the first time in their Reply regarding Sections 727(a)(7) and 727(a)(2).  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 973 (11th Cir. 2008) ("It is well settled in this circuit that an argument not included in the appellant's opening brief is deemed abandoned. And presenting the argument in the appellant's reply does not somehow resurrect it.") (internal citations omitted).

[26] Section 101(31)(A)'s definition of "insider" "includes—if the debtor is an individual—. . . (ii) [a] partnership in which the debtor is a general partner . . . ."  11 U.S.C. § 101(31)(A).  Additionally, Harley Kane was an insider in the Partnership's Chapter 11 Proceeding. See 11 U.S.C. § 101(31)(C) (an insider "includes—if the debtor is a partnership—(i) [a] general partner of the debtor . . . .").

21

that he did not believe his conduct was violative of the Orders and that he attempted to correct the violation is unsupported and insufficient to rebut Appellees' damaging evidence. See Jan. 23, 2012 Hr'g Tr., at 1124–30 (ECF No. 2-25); see also Opinion, at 20 ("Harley Kane's testimony was the only evidence offered by the [Appellants] on these issues. It was plainly fabricated."). The overwhelming evidence demonstrates that Harley Kane knew that upon dismissal of the Partnership's Chapter 11 Proceeding, Appellees would immediately garnish the Partnership's operating account and that Harley Kane took advantage of the delayed effectiveness of dismissal to pay his personal, non-dischargeable obligations. See Opinion, at 20–21. Simply put, Harley Kane caused the Partnership to pay his real estate taxes in order to hinder, delay, and defraud the ability of Appellees to collect as creditors under the State Court Judgment. Accordingly, this Court finds that the Bankruptcy Court did not err when it determined that Harley Kane's discharge should be barred pursuant to violations of Sections 727(a)(7) and 727(a)(2).[27]

---

[27] In affirming the Bankruptcy Court's determination that Harley Kane's discharge is barred pursuant to Sections 727(a)(7) and 727(a)(2), this Court declines to address the Bankruptcy Court's ruling that his discharge could also be barred pursuant to Section 727(a)(6). See In re McKinney, No. 10-AP-06017, 2012 WL 1030445, at *4 (Bankr. S.D. Ga. Mar. 5, 2012) ("A finding against the debtor under any one subsection of § 727(a) is a sufficient ground for denial of the discharge.") (quoting In re Protos, 322 Fed. App'x at 932–33).

## CONCLUSION

Accordingly, the Bankruptcy Court's Final Judgment and Memorandum Opinion, which were entered by the Bankruptcy Court on May 10, 2012, are hereby AFFIRMED.  The Clerk of the Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of January, 2013.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record